Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3557 | **DATE** | ½/2003 |
| **CASE TITLE** | ALBERT BETHEA, ET AL vs. ROBERT J. ADAMS & ASSOCIATES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due___ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **The order of the bankruptcy court granting motion to dismiss is affirmed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 03 2003 | 18 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
JAN 0 3 2003

ALBERT BETHEA, et al.,

    Plaintiffs-Appellants,

v.

ROBERT J. ADAMS & ASSOCIATES, et al.,

    Defendants-Appellees.

No. 02 C 3557
Judge James B. Zagel

Appeal from U.S. Bankr. Ct. Nos.: 99 B 13557; 01 A 001877; 99 B 34885; 01 A 00196; 99 B 006516; and 01 A 0197.

## OPINION

The appellants ("Debtors") in this bankruptcy appeal were debtors in cases arising under chapter 7 of the Bankruptcy Code. Each of the Debtors retained one of the defendant law firms ("Law Firms") to prepare and file a bankruptcy petition, and those petitions were filed. Before the petition filings, though, the Debtors signed standard form retainer agreements requiring them to pay the Law Firms' initial fees in monthly installments. The Debtors do not allege that those fees were unreasonable or that the Law Firms did not earn them. In accordance with the terms of these agreements, the Law Firms deducted monthly payments from the Debtors' bank accounts for the legal services they performed preceding the orders for relief. The Law Firms deducted installments while the chapter 7 bankruptcy cases were pending and after the Debtors received their discharges. Debtors subsequently sued the Law Firms accusing them of violating the automatic stay and discharge injunction of the Bankruptcy Code and of professional negligence. The allegedly unlawful conduct consists of collecting agreed fees after the bankruptcy cases were filed. The Law Firms moved to dismiss Debtors' complaint for failing to state a claim on which relief can be granted. The United States Bankruptcy Court for the Northern District of Illinois



granted the motion, concluding that Congress intended the fee agreements at issue to be regulated by § 329 of the Code, not voided by the automatic stay and discharge provisions. *In re Bethea*, 275 B.R. 284, 295 (Bankr. N.D. Ill. 2002). Debtors now appeal this decision to this court, which has jurisdiction pursuant to 28 U.S.C. § 158(a). Because the Bankruptcy Court's order is based on a question of law, I must review the issue *de novo*. *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002).

The issue in this case concerns claims arising from a pre-petition retainer agreement between a chapter 7 debtor and his bankruptcy counsel. The Debtors would have such claims treated just like any other pre-petition claim under the automatic stay created under § 362 and the discharge injunction created by §§ 727 and 524 of the Bankruptcy Code.[1] The Debtors' analysis is supported by the vast majority of courts having considered the question. *See In re Biggar*, 110 F.3d 685 (9th Cir. 1997); *In re Nieves*, 246 B.R. 866 (Bankr. E.D. Wis. 2000); *In re Toms*, 229 B.R. 646 (Bankr. E.D. Pa. 1999); *In re Jastrem*, 224 B.R. 125 (Bankr. E.D. Cal. 1998); *In re Voglio*, 191 B.R. 420 (Bankr. D. Ariz. 1996); *In re Symes*, 174 B.R. 114 (Bankr. D. Ariz. 1994). The Law Firms argue that the automatic stay and discharge provisions of the Code cannot be read in isolation from § 329, which governs the fees of "[a]ny attorney representing a debtor in a case under [the Bankruptcy Code], or in connection with such a case." 11 U.S.C. § 329(a). As such, they argue that claims for pre-petition legal fees are not subject to automatic stay and discharge. The Law Firms' analysis is supported by only one opinion that is still viable. *See In re Perry*, 225 B.R. 497 (Bankr. D. Colo. 1998); *see also In re Mills*, 170 B.R. 404 (Bankr. D. Ariz. 1994)

---

[1] Section 362 prohibits the collection of debtors upon filing of a debtor's bankruptcy petition, and § 524 creates a permanent injunction against collection upon entry of a debtor's discharge order.

2

(implicitly overruled by *Biggar*). Although the Debtors win the numbers game in terms of supporting precedent, I find the Law Firms' position and the Bankruptcy Court's ruling ultimately more persuasive even though they stand alone against "a sea of uniform and contrary precedent."[2]

Statutory construction must begin with the language of the statute itself, and often ends there. *See Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990). But it sometimes cannot end there, particularly where more than one provision of a statute may fairly be said to be applicable. When this is so, a federal court "must not be guided by a single sentence or member of a sentence [but must] look to the provisions of the whole law . . . and to its object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986). In other words, due regard must be given to the context of the statute. *In re Handy Andy Home Improvement Centers*, 144 F.3d 1125, 1128 (7th Cir. 1998) ("When context is disregarded, silliness results."). Thus, the Supreme Court has been reluctant to interpret one section of the Bankruptcy Code so that another one is surplusage or insignificant, *Davenport*, 495 U.S. at 562, and it has directed that a statute "cannot be held to destroy itself," *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995).

Significantly for present purposes, "[w]here two statutes deal with the same subject matter, they are to be read *in pari materia* and harmonized when possible." *In re Johnson*, 787 F.2d 1179, 1181 (7th Cir. 1986). Equally significantly, "[a] general statutory rule usually does not govern unless there is no more specific rule." *Green v. Bock Laundry Machine Co.*, 490 U.S.

---

[2] Pursuant to the Debtors' request, I have given "most respectful consideration" to prior decisions on this matter, *see Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987), but respect does not entail blind adherence solely for the sake of consistency as the Debtors seem to imply.

3

504, 524 (1989). Thus, where there is a particular remedial scheme addressing a particular subject matter, that regulatory structure may not be circumvented by resort to laws of more general applicability. *Boulahanis v. Board of Regents*, 198 F.3d 633, 641 (7th Cir. 1999). Once an entire statute has been properly considered, if "congressional intent is clear, [the court's] sole function is to enforce the statute according to its terms." *Davenport*, 495 U.S. at 564.

This appeal concerns the relationship between bankruptcy debtors and their attorneys. Congress wrote a series of sections into the Code to regulate the relationship between debtors and professionals. *See* 11 U.S.C. §§ 327-331. One of those sections, § 329, deals specifically with the relationship between attorneys and clients in chapter 7 cases.[3] Pursuant to § 329(a), attorneys representing debtors must disclose the amount, source and terms of all "compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case." *Id.* Section 329(b) requires a bankruptcy court to scrutinize that agreement, whether or not the attorney applies for compensation under § 330(a). If the agreed fees exceed the reasonable value of the legal services provided, this section authorizes two remedies: the court may order the return of any payments that have already been made or it may cancel the agreement to the extent excessive. Congress therefore explicitly contemplated that there will be

---

[3] "(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to (1) the estate, if the property transferred (A) would have been property of the estate; or (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or (2) the entity that made such payment."

4

some instances in which the debtor will have already paid all the fees related to the case before the case is commenced, and there will be other instances in which the debtor will have not paid all the fees but will have agreed to pay some part after the case is commenced.

It is clear to me that the fees of attorneys representing debtors in bankruptcy are governed by § 329, not by the more general automatic stay and discharge provisions. I reach this conclusion partly because I find that there is a conflict between § 329 and the automatic stay and discharge provisions. If pre-petition attorneys fees were subject to automatic stay and discharge, then § 329 would serve no purpose in chapter 7 cases as applied to "compensation . . . agreed to be paid." The remedy for excessive fees to be paid in the future would be unnecessary if collection of those fees is subject to automatic stay and the obligation is then permanently extinguished by the discharge provision. The *Perry* Court agreed:

> Congress, by enacting Section 329 . . . clearly contemplated the existence of fees "agreed to be paid . . . for services rendered or to be rendered" in contemplation of and in connection with a bankruptcy case. Congress legislated a method of disclosure of attorneys fees and provided a method to regulate such fees in order to protect vulnerable debtors. It is not consistent with the enactment of Section 329 to assume that Congress intended to eradicate the existence of fees "agreed to be paid . . . for services rendered or to be rendered" by granting a discharge to such fees.

225 B.R. at 500. The Court concluded that a reasonable fee for legal services, properly disclosed, was not subject to discharge. Furthermore, in place of the legal standard of "reasonable value" set forth in § 329, the automatic stay and discharge provisions substitute a legal standard of negation with respect to post-petition payments for pre-petition services.[4] Therefore, the Debtors' position would essentially negate substantive provisions of § 329.

---

[4] The "reasonable value" standard is substantive. *See Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr. S.D. Ohio 1982).

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461 (2002) recognizes that applying a statute's plain language, as advocated by the Debtors, cannot be done if there exists "conflicting provisions" in a statute, such as the situation here.

The history of § 329 also supports the determination that it, rather than the automatic stay and discharge provisions, covers the fees of attorneys representing debtors in bankruptcy. Congress derived § 329 from a provision that was different from other sections generally applying to creditors, former Bankruptcy Rule 2002, which in turn had been derived from § 60(d) of the 1898 Bankruptcy Act. See 3 *Collier on Bankruptcy* ¶ 329.LH[1]-[4], at 329-30 to -31 (Lawrence P. King ed., 15th ed. 1996); H.R. Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S Rep. No. 989, 95th Cong., 2d Sess. 39 (1978). Section 60(d) was designed as much to protect debtor's right to counsel as it was to control the compensation of counsel. *See In re Wood v. Henderson*, 210 U.S. 246, 253 (1908); *In re Cummins*, 196 F. 224, 225-26 (S.D.N.Y. 1912); *In re Falk*, 30 F.2d 607, 609 (2d Cir. 1929); *Caldwell v. Valley Nat'l Bank of Phoenix*, 208 F.2d 645, 646 (10th Cir. 1953). For example, the Second Circuit noted that the "object" of the provision "was to afford the bankrupt representation by counsel, who would not have to take chances as a general creditor, by might know that a reasonable fee was assured, and hence would be zealous to render active service in what is often a difficult situation." *In re Falk*, 30 F.2d at 609. Thus, courts recognized that employment contracts with debtors' attorneys did not fit comfortably within the scheme designed to regulate payments to general creditors, because the agreement between a debtor and his counsel is fundamental to the success of the bankruptcy case itself and is thus qualitatively different.

The normal rule of statutory construction, that if Congress intends for legislation to change a judicial interpretation, it clearly expresses that intention, is followed with particular care in construing bankruptcy codifications. *Midatlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501 (1986). The Supreme Court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Davenport*, 495 U.S. at 563. "When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992). Because Congress said nothing indicating that it intended to change prior law with its enactment of § 329(b), § 329 ought to be considered a discrete, exclusive regulation of fee agreements. There is nothing in the Bankruptcy Code or its legislative history indicating that Congress intended to narrow the right of debtors to the advice and assistance of counsel in any way or to diminish the ability of debtors to make provision for reasonable attorneys fees, as Debtors' theory proposes. To the contrary, § 329 recognizes the right of debtors to the assistance of counsel, and protects that right by enabling debtors to make provision for the reasonable compensation of counsel.

Finally, common sense and important public policy concerns weigh against the Debtors' theory of automatic stay and discharge. Nobody could seriously argue that Congress intended to make it impossible for chapter 7 debtors, but not debtors under other relief chapters, to enter into agreements with the bankruptcy attorneys providing for payment after the commencement of the case. Such a result would not further the statutory goal of relieving honest but financially distressed individuals from debt incurred in the past; rather it would make it more difficult for many debtors to get a fresh start that is the promise of chapter 7.

Reading all relevant provisions of the Code in their context as part of a coherent whole, with a view towards the Code's history and fulfilling the overriding purposes of its statutory scheme, leads to the reasonable conclusion that Congress intended that attorney fee agreements be regulated under § 329 and necessarily excluded from the reach of the automatic stay and discharge. As such, Debtors' complaint failed to allege any violation of §§ 362 or 524, and because no such violation was alleged, there was no basis for a claim of professional negligence under Illinois law. Judge Barliant did a good job in his opinion and offered an analysis which, despite some initial doubts based upon the majority decisions, I find persuasive and have followed in this opinion.

The Bankruptcy Court's decision granting the Law Firms' motion to dismiss all counts of the Debtors' complaint for failure to state claims upon which relief can be granted is AFFIRMED.

ENTER:

James B. Zagel
United States District Judge

DATE: 2-\-2003